UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CRYSTAL E. STEWART,**

      **Plaintiff,**

**v.**                                           **Case No: 6:21-cv-170-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM AND OPINION

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying an application for disability insurance benefits and supplemental security income. In a decision dated June 3, 2020, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from September 25, 2017, through the date of the decision. R.149. Having considered the parties' memorandum and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

    **I.**     **Issues on Appeal**

Claimant argues on appeal that the ALJ did not properly evaluate the medical opinions of record based on an adequate rationale and substantial evidence when determining the Residual Functional Capacity (RFC). Doc. 26.

    **II.**     **Standard of Review**

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards.

> Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Claimant filed the claim after March 27, 2017, so the revised regulations apply in this action.

The revised regulations require that an ALJ apply the same factors in the consideration of the opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ will assess the persuasiveness of a medical source's opinion in light of five factors: 1) supportability; 2) consistency; 3) relationship with the claimant;[1] 4) specialization and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c); 416.920c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-

---

[1] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

- 2 -

by-source basis—the regulations themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).

Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Mudge v. Saul*, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019)). "Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

### III. Discussion

There is only one issue on appeal before the Court: Whether the ALJ properly evaluated the medical opinions of record based on an adequate rationale and substantial evidence when

determining the RFC. Claimant's specific argument is that the RFC conflicts with the opinion of her treating neurologist, Gary Weiss, M.D.[2]

The Court agrees with the Commissioner that substantial evidence supports the ALJ's decision, and it should be affirmed. The ALJ found that Claimant has the RFC to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except:

> She can lift and carry, and push and pull, 50 pounds occasionally and 25 pounds frequently. The claimant can frequently stoop, balance, kneel, crawl, crouch, and climb ramps and stairs; she can never climb ladders, ropes, or scaffolds. The claimant must never operate a motor vehicle, or be exposed to open water, unprotected heights, or moving unprotected machinery. She can understand, remember, and carry out simple tasks; make simple work-related decisions; have occasional work-related interactions with the general public; and have occasional changes in the work setting.

In determining the RFC, the ALJ found, in relevant part, the following with respect to Dr. Weiss' opinions and Claimant's seizures:

---

[2] Claimant states that Dr. Weiss opined to the following regarding her seizures for the period beginning on September 25, 2017, through April 1, 2020:
- seizures averaged twice per week and 8 per month;
- seizures were experienced in the early morning or afternoon due to too much activity;
- partial complex seizures with secondary generalization were experienced weekly;
- there was a history of grand mal seizures;
- Dr. Weiss identified the following as postictal phenomena: confusion, severe headaches, exhaustion, difficulty communicating, anxiety, and vomiting;
- rest was necessary at least a day after a seizure;
- confusion, exhaustion, and headaches occurred for at least a day or two after a seizure, which would interfere with daily activities;
- stress and exertion could precipitate seizures;
- Claimant was incapable of even "low stress work;"
- Klonopin, Trazadone, Cyclobenzaprine, and Lamictal were taken which have side effects of dizziness and eye focusing problems;
- associated mental problems existed including depression and memory problems;
- the impairments would likely produce "good days" and "bad days;"
- absences of more than 4 days per month due to the impairments or treatment would occur; and
- any stressful situations due to anxiety and stress brining on seizures should be avoided.

Doc. 26 at 15-16, citing R. 845-848.

In April 2020, Dr. Weiss's office provided a statement regarding the claimant's seizures (12F). He described the claimant's seizures as partial complex seizures with secondary generalization, and stated that they happened, on average, twice per week (12F). Dr. Weiss's statement further noted post-ictal symptoms of confusion, headache, exhaustion, and vomiting, which could last for up to two days after a seizure, and otherwise indicated that during seizures, the claimant would require a safe space cleared and someone to assist / turn her on her side (12F). Dr. Weiss opined that the claimant should avoid stressful situations and anxiety, which can trigger her seizures, and concluded that the claimant was incapable of working, and would miss greater than four days of work per month (12F). These opinions are limited in their persuasiveness. Notably, many of the iterated limitations or seizure-based harm prevention measures provided (such as preventing the claimant from suffocating by turning her on her side during a seizure) and two days of post-ictal symptoms are directly related to grand mal seizures, which the claimant has not had since 2016. Further, they are not consistent with Dr. Weiss's notes, wherein the claimant regularly describes absence-type seizures, and for which there is no discussion of prolonged post-ictal complaints. Additionally, there is no clear indication that the claimant's seizure activity is specifically worsened in stressful situations, nor a demonstration that she would be unable to attend work several days per month due to her seizures or other impairments.

While the claimant's record shows that she has limitations as a result of her impairments, it also shows that she is not as limited as alleged. The claimant alleged a significant seizure disorder, and while she has a longstanding diagnosis, and likely associated structural findings of mesial temporal sclerosis, her records demonstrate that she has experienced minimal seizure activity during the relevant period. The claimant stated that her last grand mal seizure was in mid-2016, when she had a medication change; notably, this is also when she reported that she became sober. Further, EEG testing has not shown any active seizure activity, and the claimant's reported symptoms of eye twitching or brief absence seizures do not appear to be witnessed, nor otherwise likely to preclude work activity on a continuous and consistent basis. However, due to the claimant's seizure history, and her increased risk of harm from heavy work and hazards, I find that she is most appropriately limited to medium exertional work, with no work climbing ladders, ropes, or scaffolding, or exposure to other hazards such as driving, unprotected water or heights, or moving machinery. The claimant has had limited follow up for her mental impairments, in part due to financial concerns. She reported memory issues and difficulty concentrating, related to both her seizures and anxiety, and otherwise demonstrated a labile mood at multiple evaluations. The claimant's record also shows that she is able to care for herself and a home as needed, and her self-report of symptoms is generally in the mild range. Overall, she remains able to understand and carry out simple tasks and make simple decisions. As the claimant reported increased symptoms in the context of exciting or stressful situations, as well as in groups of people, she is additionally limited to work with no more than occasional workplace changes, and no more than occasional work-related contact with the public.

R. 147.

Claimant's challenge to the RFC and the ALJ's determination regarding the persuasiveness of her physician's opinion is multifaceted. Claimant argues that the ALJ's findings regarding the post-ictal complaints, Dr. Weiss' consideration of the gran mal seizures, and the effect of stress on the seizures is based on a misstatement of the record, and the ALJ erred in not considering an MRI in the decision. Claimant also contends that the ALJ's analysis was generally inadequate in its treatment of Dr. Weiss' opinion because it lacked a comparison to other sources and did not discuss the nature of the relationship with Claimant.

Before addressing these challenges to the decision, the Court notes that Claimant recognizes in the Joint Memorandum the Social Security Administration's 2017 Regulations and discusses the need to consider the persuasiveness of a medical source opinion under the revised law, which the ALJ did with respect to Dr. Weiss' opinion. However, she then briefly mentions the case law pre-dating those revisions, case law interpreting the prior regulation and supporting a requirement that the ALJ state with particularity the weight given to each opinion by a physician. To the extent these citations are offered in an attempt to a bring claim for relief because the ALJ failed to assign weight to her treating physician's opinion, the mere reference to the law is inadequate and the argument is deemed waived. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("For an issue to be adequately raised in the opening brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014)); *see also Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A]

legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").³

Beyond waiver, the Court turns to the individual arguments. In part, Claimant asserts that remand is warranted because the ALJ misstated the record with respect to the ALJ's determination that Dr. Weiss's notes do not include a discussion of prolonged post-ictal complaints. To the contrary, Claimant states that the record reflects her reports to Dr. Weiss that Claimant was having staring spells, zoning out, and experiencing muscle twitches as early as her initial exam. *Id.*, citing R. 589. Claimant adds that she reported to her physician that she could not handle work stress and had a hard time following simple commands; had difficulty with short term recall and word associates; experienced rare dizziness and vertigo; had sleep problems; felt tired; and was lightheaded, disoriented, and suffered from memory lapses. *Id*. at 19, citing R. 590. Claimant states that, in January 2018, she continued to struggle with short term recall and word association; in August 2018, reported the small eye twitch and difficulty with short term memory; and in November 2018, reported more seizures with staring off and unresponsiveness. *Id.*, citing 570, 574, 584. Claimant states that she complained that she could not use her brain normally anymore, reported a loss of cognitive power, and continued to describe a small eye twitch and lid drop with some twitching in her arms and hands. *Id.*, citing R. 570. Claimant asserts that she had to sit and rest which "is clearly a post-ictal complaint." *Id*. Based on these reports, Claimant argues the ALJ's finding was a misstatement of the evidence.

The Court does not agree. At issue is Dr. Weiss' April 1, 2020 Seizures Medical Source Statement (the Statement) wherein Dr. Weiss stated that Claimant has convulsive (grand mal or

---

³ The Court's conclusion is the same under Eleventh Circuit precedent and the Social Security Administration's 2017 revised regulations. The ALJ's decision is supported by substantial evidence and Claimant's arguments do not warrant relief."

psychomotor) and nonconvulsive (petit mal, psychomotor or focal) seizures. R. 845. With respect to the degree that the seizures interfere with Claimant's daily activities, Dr. Weiss opines in the Statement that Claimant has confusion, exhaustion, and headaches that last for at least a day or two after a seizure. R. 846. The ALJ found that the opinion regarding this prolonged period is inconsistent with Dr. Weiss's record.

Claimant is correct that Dr. Weiss's notes reflect that Claimant had a history of or experienced disorientation, dizziness, fatigue, "head problems," and that she sits down to rest. While Dr. Weiss noted at times that Claimant denied vertigo, dizziness, or headaches (R. 579, 580), there are other visits where a history of rare dizziness and vertigo is noted along with memory lapses or loss, lightheadedness, and fatigue. (R. 582, 582, 586). Even so, there is nothing in the record during Claimant's visits with Dr. Weiss that shows that these issues occur for two days following a seizure as written in the Statement or otherwise demonstrates the longevity of the issues. In other words, the Court agrees that the ALJ's finding regarding the prolonged nature of the complaints is supported by the evidence, and Claimant's misstatement argument is without merit.

Similarly, the Court is not convinced by Claimant's next argument that the ALJ "wrongly assumed" that many of the limitations and preventions mentioned in the April 1, 2020 Statement were related to the gran mal seizures because the opinion was only limited to Claimant's treatment for nonconvulsive seizures. With respect to the Statement, Claimant contends that Dr. Weiss was clearly "talking about the partial complex seizures" when he opined that Claimant experiences seizures in the early morning or afternoon due to too much activity and that the partial complex with secondary generalization are weekly. *Id*. Claimant also states that Dr. Weiss's opinion regarding absences is supported by the finding that she had confusion, exhaustion, and headaches

for at least a day or two after a seizure and that she typically needs to rest at least a day. *Id*. As such, it is Claimant's position that Dr. Weiss was obviously treating Claimant for the partial complex seizure and that the ALJ's "assumption" regarding the gran mal seizures was error. In short, Claimant argues that Dr. Weiss's Statement did not take those seizures into consideration in forming the opinion, though the ALJ found that Dr. Weiss did.

Claimant contends that (according to her records) her last reported gran mal seizure was 2016 (before the alleged amended onset date). So, if, in offering his opinion as to Claimant's limitations, Dr. Weiss took into consideration the limitations attributed to those seizures (which no longer occur) then his opinion regarding work-related restrictions for the relevant time-period is undermined. This is what the ALJ concluded, and the Court agrees.

Again, Claimant is correct that Dr. Weiss specified in the Statement that she typically has partial complex seizures and mentioned that gran mal seizures have not occurred recently. R. 845. However, Dr. Weiss also checked the box next to "convulsive (gran mal or psychomotor)" answering the inquiry "What type of seizures does your patient *have*"—present tense; checked two boxes for the symptoms associated with Claimant's seizure disorder and wrote "(w/ grand mals)" next to the inquiry; and checked multiple boxes regarding the actions others must take during the seizures—such as clearing the area of hard or sharp objects and turning her on her side to allow saliva to drain from her mouth—with no indication that these measures are limited to the nonconvulsive seizures. R. 845, 846 (emphasis added). Thus, Claimant's contention regarding what is clear from the Statement is belied by the record. The ALJ's consideration of the convulsive/nonconvulsive issue to decide the persuasiveness of Dr. Weiss's opinion is supported by the evidence.

The same holds true for Claimant's separate challenge to the ALJ's finding that there was no clear indication that the seizure activity was specifically worsened in "stressful situations." Claimant argues that the ALJ's finding was error because Dr. Weiss noted a close connection between her emotional state and the partial complex seizures from the first exam. *Id*. For example, Claimant states that she described to her physician panic attacks involving back and forth eye movement and reported that she had a right eye twitch with stress or fatigue, and Claimant states that this led Dr. Weiss to opine that Claimant would experience a seizure in the early morning or afternoon due to activity. *Id*.

Dr. Weiss's record does reflect panic attacks, eye movement, fatigue, and anxiety. R. 570, 574. Notably, Dr. Weiss assesses Claimant as having stress due to problems with seizures, but also states that Claimant suffers from anxiety which exacerbates her epilepsy. R. 570, 572. So, it appears that Claimant's characterization of the record that her physician drew a connection between her anxiety and the seizures has support. But that does not mean the ALJ erred in his "no clear indication" finding. Dr. Weiss's general references to stress, anxiety, and the exacerbation of the seizures is not a statement of increasing symptoms caused by stressful *situations*. It is axiomatic that people experience various events or situations in the workplace, and the ALJ is tasked with determining if an individual is unable to engage in any substantial gainful activity. The ALJ examined Dr. Weiss's opinions with respect to "stressful situations," and the ALJ's statement was not inaccurate.

Claimant then complains that the ALJ failed to consider the August 2017 brain MRI that showed that Claimant had mesial temporal sclerosis (MTS). *Id*. at 19-20. Claimant states that mesial temporal sclerosis is the most common cause of structural epilepsy and focal seizures in the temporal lobe. *Id*. at 20. First, the Court is not convinced that the ALJ failed to recognize and

address the MRI finding regarding MTS. The ALJ specifically determined that Claimant has a longstanding diagnosis for a "significant seizure disorder" with likely associated structural findings of MTS. R. 147. Second, assuming Claimant is correct that MTS is the most common cause of structural epilepsy and focal seizures, she fails to explain how the MRI reflects any limitations that were not included in the RFC or how the ultimate decision would have been changed had the ALJ included a more direct analysis. The MRI shows MTS as Claimant asserts, but that alone is not sufficient to demonstrate that she suffered from limitations that directly contradicted the ALJ's decision. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Accordingly, Claimant's argument fails.

Overall, Claimant concludes that the ALJ's analysis was inadequate because the ALJ: failed to compare the opinion with evidence from other medical and nonmedical sources; should have noted that Dr. Weiss' opinion was consistent with Claimant's testimony; did not consider the length, purpose, and frequency of the treatment relationship or the frequency of exams; failed to consider that Dr. Weiss was a board-certified neurologist and "confusingly" found medial opinions of the state agency doctors more persuasive; and tended to ignore the episodic nature of the disability. *Id*. at 22-23.

The Court finds that the ALJ adequately addressed the persuasiveness of Dr. Weiss's opinion. As discussed, the ALJ explained the inconsistencies in Dr. Weiss's opinion with respect to the findings in his own records. The ALJ's analysis thoroughly discussed the consistency, or

lack thereof, in the physician's record; this relates to the supportability factor.[4]  The ALJ also sufficiently addressed Claimant's record with respect to her limitations and her allegations of a significant seizure disorder and the other evidence (e.g., EEG testing not showing any active seizure activity).  R. 147.  In sum, the Court finds that the ALJ's consideration of Dr. Weiss's opinions comports with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of the opinions.

Despite Claimant's effort to offer many reasons to undermine the ALJ's decision, the Court finds that none warrant remand.  The Court concludes that substantial evidence supports the ALJ's decision in determining the RFC, and a remand to reconsider the opinion is not appropriate.

## IV.    Conclusion

For the stated reasons, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE AND ORDERED** in Orlando, Florida on February 25, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

---

[4] The ALJ may—but is not required to—explain how she considered the remaining three factors (i.e., relationship with claimant, specialization, and "other factors").  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same)).